# Exhibit 1

FILED
2025 OCT 6 AM 9: 55

DAVIDSON CO. MASTER & CHANCERY CT

LN per order 3/6/26
26-0291-I

DILVAR TAYIP
    Petitioner

V

Docket No. 25-1399-III

BET MGM LLC
    Respondent.

FILED
ON 3/9/26
BY BM     D C & M
MARIA M. SALAS , C & M
DAVIDSON CO. CHANCERY CT.

## PETITION FOR JUDICIAL REVIEW
### OF DECISION OF THE SPORTS WAGERING COUNCIL

Appears now, the Petitioner, Dilvar Tayip, and petitions this honorable court for a review of a recent decision by the Tennessee Sports Wagering Council. In support of this petition, the petitioner states as follows:

### PARTIES

1.    The petitioner is Dilvar Tayip and Mr. Tayip resides in Nashville, Tennessee.

2.    The respondent, BetMGM LLC is a foreign, for-profit corporation, engaged in the business of sports wagering, among other activities. The respondent has a principal office at 200 Hudson Street, Suite 700, Jersey City, New Jersey 07311-1207. The respondent may be served with service of process through their Tennessee Registered Agent for process at Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203.

## IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE
## AT NASHVILLE

DILVAR TAYIP
     Petitioner

V

                                           Docket No.  26-0291-III
                                           (Bifurcated from 25-1399-III)

BET MGM LLC
     Respondents.

---

## AMENDED PETITION
## (FOLLOWING BIFURCATION FROM SPORTS WAGERING COUNCIL DISPUTE)

---

Appears now, the Petitioner/Plaintiff, Dilvar Tayip, and brings this cause of action against Bet MGM LLC.  In support of this petition, the petitioner states as follows:

### PARTIES

1. The petitioner is Dilvar Tayip, and Mr. Tayip resides in Nashville, Tennessee at 316 Gaywood Drive, Nashville, Tennessee 37211.

2. BetMGM LLC is a foreign, for-profit, corporation, engaged in the business of sports wagering, among other activities. The BetMGM LLC respondent has a principal office at 200 Hudson Street, Suite 700, Jersey City, New Jersey 07311-1207.  The BetMGM LLC respondent may be served with service of process through their Tennessee Registered Agent for process at Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203.

### JURISDICTION AND VENUE

3. Jurisdiction is proper pursuant to Tennessee Code Annotated § 16-11-102 and § 16-11-103 *et seq.*

4. Tennessee Code Annotated § 4-51-319 – Requires gaming operators to implement and enforce self-exclusion programs, and Tennessee Administrative Code Chapter 1350-01 – Establishes gaming operator responsibilities, including adherence to self-exclusion policies.

**BACKGROUND**

The facts of this matter are as follows:

5. Petitioner has engaged extensively in sports wagering since the process was legalized in the state of Tennessee.

6. Petitioner has experienced much financial success in the past in his ventures in sports wagering.

7. Despite significant past financial success, the Petitioner decided at some point in 2021 that he would stop wagering on any matters whatsoever for a period of five years.

8. Petitioner placed himself on the Tennessee Voluntary Sports Wagering Self Exclusion List on or about June 16, 2021. Petitioner self-excluded until June 16, 2026. Tennessee's self-exclusion list allows individuals affected by problem gambling to voluntarily ban themselves from casinos, internet-based gambling, video gaming terminals, and fantasy sports wagering. They can choose the length of their ban from multiple options.

9. Petitioner also, on June 16, 2021, self-excluded from Bet MGM's own website, as a separate and apart act from his state of Tennessee self-exclusion. That self-exclusion should not have been lifted, under any circumstances, until June 16, 2026.

10. BetMGM's responsible gaming policy clearly states: "Self-exclusion is irrevocable and binding for the entire selected duration. Once a customer selects a self-exclusion period, it cannot be reversed or shortened under any circumstances. Removal from a state list does not alter or override the operator's separate exclusion obligations."

11. Even if Petitioner were removed from the State of Tennessee's self-excluded gamblers list early, as was the case in May of 2023, the BetMGM Self-Exclusion should have remained in effect until 2026.

12. According to BetMGM's own policy: If an individual on their self-exclusion list somehow places a wager, the wager will be canceled and the funds returned to the gambler.

13. Petitioner placed wagers with BetMGM from May 2023 to approximately June 2025, with wins and losses totaling nearly $300,000.00. See attached, as *Exhibit A*, some samples of wagers placed during the pendency of the self-exclusion agreement. Bank statement proof of deposits made by the self-excluded petitioner to BetMGM LLC during the period of self exclusion can also be produced, under seal, if the court would like to review said information.

14. Pursuant to BetMGM's own policy, Petitioner should not have been able to place any wager during his self-exclusion term, *even if* the state of Tennessee ended his self-exclusion early.

15. By allowing the Petitioner to wager prior to the petitioner's self-exclusion term ending, and by counseling the petitioner on how to have himself removed from Tennessee's Self-Exclusion Listing early — which would not have occurred until June 2026 — BetMGM preyed on the petitioner, and, essentially, removed petitioner from his incubation of treatment too early, in violation of their own policies and to the great financial detriment of the petitioner.

## CAUSES OF ACTION FOR BET MGM LLC

16. Violations of the the Tennessee Sports Gaming Act, codified at Tennessee Code Annotated § 4-51-301 *et seq*. The factual allegations of this case represent violations of the Tennessee Sports Gaming Act in that the Act is designed to protect vulnerable citizens by punishing powerful companies that prey on them. The petitioner in this case represents a vulnerable person who has been preyed upon to his great financial detriment.

17. Violations of the Consumer Protection Act. The Tennessee Consumer Protection Act of 1977 protects consumers from unfair and deceptive business practices by prohibiting deceptive acts and offering a civil remedy for those harmed, including potential triple damages and attorney's fees. This petitioner is a consumer in Tennessee as that term is applied within the Tennessee Consumer Protection Act, and he has been victimized by unfair and deceptive business practices by being allowed to participate on a business platform, from 2023 to 2025, when he had specifically removed himself from the class of persons eligible to participate until 2026. BetMGM engaged in false and deceptive trade practices by inducing the petitioner to place wagers with false of misleading advertisements that tended to increase the likelihood of success.

18. Breach of Contract. A breach of contract claim in Tennessee requires proving the existence of a valid contract, that one party failed to perform their obligations, and that the petitioner performed his part of the agreement, and that the petitioner suffered damages as a result of the breaching party's actions or inactions. For a breach to be considered "material," it must be significant enough to allow the non-breaching party to end the contract and sue for damages. In this matter, the petitioner signed himself in to the BetMGM Self Exclusion program,

and asked to be disallowed to participate as a gambler again until 2026. BetMGM breached the contract when the defendant corporation allowed petitioner to begin placing wagers again in 2023 — three years prior to the self exclusion period ending in 2026. BetMGM knew, or reasonably should have known, that they were taking advantage of a vulnerable individual who had placed himself into their company's self-exclusion program. Instead, BetMGM allowed petitioner to wager and to experience significant losses.

BetMGM offered a self-exclusion program to the petitioner. Petitioner accepted, and entered himself into the self-exclusion program. BetMGM knew, or should have known, that the petitioner was a vulnerable person who was at-risk for gambling addiction. Nonetheless, BetMGM breached the contract of self-exclusion by allowing the petitioner to wager prior to the contract term formally ending in 2026.

BetMGM LLC ceaselessly solicited the petitioner with offers of expense paid travel, food, beverage, luxe accommodations, and "table money" advances throughout the time that the petitioner was self-excluded. Petitioner was making efforts to have his gambling addiction problems treated during his self-exclusion, and the ceaseless, luxurious solicitations from BetMGM were very counter-productive to the efforts.

The petitioner and the respondent are the only parties to the self-exclusion contract referenced, and the respondent is in possession of said contract.

19. Negligence and Negligent Enablement. Negligence consists of duty, breach, causation, damages, and foreseeability. Duty exists in this case because the petitioner is a long-time customer of the respondent/defendant, BetMGM, who had self-excluded himself from participation with the respondent until 2026. BetMGM breached their duty by allowing the

petitioner to place wagers prior to the end of his self exclusion term. The breach by BetMGM of allowing the petitioner to place wagers before his self-exclusion ended, have caused significant financial damages to the petitioner. There is no other cause, other than the breach by BetMGM, that could have led to the petitioner's financial losses that he is currently experiencing. The financial losses being experienced by the petitioner are a reasonably foreseeable outcome of the breach of the duty owed by BetMGM to the petitioner, as a self-excluded individual.

Further, the respondent, BetMGM, enabled the addictive sports gambling behaviors exhibited by the petitioner. Respondent, BetMGM, knew or reasonably should have known, of the tendencies of the petitioner, since the petitioner had formally requested self exclusion until 2026.

20. Negligent Misrepresentation. The Defendant/Respondent was acting in the role of a business or professional capacity. The Defendant made statements to the Plaintiff as a representative of Bet MGM LLC, and said statements were intended by the Defendant to induce the Plaintiff/Petitioner to enter into the business agreement of gambling by utilizing the Defendant's online platform. Said statements and representations did indeed induce the Plaintiff to enter into the business agreement of placing wagers utilizing the Defendant company's platform. Said statements and representations made by the Defendant were misleading, and the Defendant failed to exercise reasonable care in communicating information to the Plaintiff, who was an acknowledged gambling addict. At the time of the statements, the Defendant knew, or reasonably should have known, the statements were misleading and could cause great harm to the petitioner/plaintiff. The Plaintiff/Petitioner

relied, to his great detriment, on the Defendant's seemingly superior knowledge, skill, and judgment with regard to the early removal from the self-exclusion program.

21. Unjust Enrichment. The Defendant / Respondent has fraudulently absconded with approximately $300,000.00 of the petitioner's personal property by accepting wagers from him when he should have remained self-excluded and forbidden from wagering. The Petitioner did not gratuitously bestow his personal property upon the Defendant. Thus, the Defendant has been unjustly enriched by this debacle.

22. Breach of Implied Covenant of Good Faith. The parties are expected to act with good faith and in a commercially reasonable manner in all business dealings with one another. The Defendant in taking advantage of the Petitioner when the Petitioner should have been self-excluded has breached the implied covenant of good faith.

23. Cause of Action: Fraud. In failing to act responsibly, the Defendant, a gaming industry titan, assisted the Petitioner, an individual with an acknowledged gambling problem or gambling addiction, with ending the self-exclusion early. The Defendant has made false or misleading representations to the Plaintiff/Petitioner to convince the Plaintiff to end the self-exclusion term early, and to start placing wagers again. These irresponsible actions and inactions on behalf of the defendant have been reasonably calculated to deceive the plaintiff; and these actions / inactions / statements have been made with the intent to deceive; the petitioner/plaintiff has, in fact, been deceived by the Defendant; and the plaintiff has been severely financially damaged by the deception.

## PRAYERS FOR RELIEF

As a result of violations of the causes of action listed above, the petitioner respectfully requests damages from Bet MGM LLC in the following amounts:

A return of all money lost while gambling when the self-exclusion should have still been in effect from 2021 to 2026, plus interest, in the amount of $325,000.00; and an additional award for all of the other included causes of action included herein in the amount of $600,000.00.

Petitioner respectfully requests that damages from Bet MGM LLC be trebled in light of the fraudulent behavior of the respondent Bet MGM LLC in encouraging, proctoring, and allowing the self-excluded petitioner to place wagers from 2021 to 2026, while self-excluded.

Petitioner respectfully requests an award of all attorneys fees and all costs from Bet MGM LLC in pursuing this matter.

Petitioner respectfully requests an award of any and all other relief that he is entitled to under the law from BetMGM LLC.

Respectfully submitted,
LAW OFFICE OF RACHEL ZAMATA, LLC


/s/ Rachel Zamata Odom Swanson
Rachel Zamata Odom Swanson, Esq. (B.P.R. 29328)
3200 West End Avenue, Suite 500
Nashville, Tennessee 37203
rachel@rachelzamatalaw.com
Telephone      615-352-3885
Facsimile      615-601-3118

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, upon the filing of this document on April 2 2026, a true and correct copy of the foregoing has been sent via email to:

Tennessee Attorney General's Office
Tyler Sanders
P.O. Box 20207
Nashville, Tennessee 37202-0207
tyler.Sanders@ag.tn.gov

And

Kevin Baltz, Esq.

Jeremy Ray, Esq.
BAKER DONELSON
1600 West End Avenue, Suite 2000, Nashville, Tennessee 37203

kbaltz@bakerdonelson,com

*Counsel for Bet MGM LLC*

<u>/s/ Rachel Zamata Odom Swanson</u>
Rachel Zamata Odom Swanson, Esq.

**EXHIBIT A**



Live **1**　　　Open **1**　　　Settled

Parlay • 3 Legs　|　**Edit Bet**　　　+645

Kentucky -2.5 | Alabama -8.5 | Boston Celtics -11.5

**Hide legs** ∧

✅ **Kentucky -2.5**　　　-110
　Spread
　**Result: Kentucky -2.5**
　Kentucky won by **9**

　Illinois @ **Kentucky** · 75 - 84 Finished

○ **Alabama -8.5**　　　+100
　Spread
　Alabama ahead by **9**

　🔴 Saint Mary's CA @ **Alabama** · 63 - 72 2H < 03:45

○ **Boston Celtics -11.5**　　　-105
　Spread
　Celtics ahead by **13**

　🔴 **Celtics** @ Trail Blazers · 129 - 116 Q4 < 01:15

Stake: **$1,000.00**　　Potential payout: **$7,454.55**

**Cash Out $2,574.25**

**Auto cash out**

TN · 3/23/25 · 5:36 PM　📄 Betslip ID: 200K2CBZFB　↗



Case 3:26-cv-00409    Document 1-1    Filed 04/06/26    Page 14 of 28 PageID #: 18

FILED

2025 OCT -6 AM 9:55

CLERK & MASTER
DAVIDSON CO. CHANCERY CT

LN

**DILVAR TAYIP**
    Petitioner

V

Docket No. 25-1399-III

**BET MGM LLC**
    Respondent.

---

## PETITION FOR JUDICIAL REVIEW
## OF DECISION OF THE SPORTS WAGERING COUNCIL

---

Appears now, the Petitioner, Dilvar Tayip, and petitions this honorable court for a review of a recent decision by the Tennessee Sports Wagering Council. In support of this petition, the petitioner states as follows:

### PARTIES

1.    The petitioner is Dilvar Tayip and Mr. Tayip resides in Nashville, Tennessee.

2.    The respondent, BetMGM LLC is a foreign, for-profit corporation, engaged in the business of sports wagering, among other activities. The respondent has a principal office at 200 Hudson Street, Suite 700, Jersey City, New Jersey 07311-1207. The respondent may be served with service of process through their Tennessee Registered Agent for process at Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203.

## JURISDICTION AND VENUE

3.      Appeal to this honorable court from the Tennessee Sports Wagering Council is proper pursuant to Tennessee Code Annotated § 4-5-322 *et seq*, and pursuant to the Tennessee Uniform Administrative Procedures Act (TUAPA), and also pursuant to the Sports Wagering Council's own rules. Tennessee Code Annotated § 4-51-301 *et seq*. (Sports Gaming Act) – Governs sports wagering and establishes the Council's authority. Tennessee Code Annotated § 4-51-319 – Requires operators to implement and enforce self-exclusion programs. Tennessee Code Annotated § 4-5-322 (TUAPA) – Allows for judicial review of contested agency decisions, including the Council's rulings, and Tennessee Administrative Code Chapter 1350-01 – Establishes operator responsibilities, including adherence to self-exclusion policies.

4.      The Chancery Court may reverse or modify the Sports Wagering Council's decisions if the Chancery Court finds that the decision prejudiced the petitioner's rights because the administrative findings, inferences, conclusions, or decisions were: In violation of constitutional or statutory provision; In excess of the agency's statutory authority; Made using an unlawful procedure; Arbitrary, capricious, or characterized by an abuse of discretion.

## BACKGROUND

The facts of this matter are as follows:

5.      Petitioner has engaged extensively in sports wagering since the process was legalized.

6.      Petitioner has experienced much financial success in the past in his ventures in sports wagering.

7. Despite significant past financial success, the Petitioner decided at some point in 2021 that he would stop wagering on any matters whatsoever for a period of five years.

8. Petitioner placed himself on the Tennessee Voluntary Sports Wagering Self Exclusion List on or about June 16, 2021. Petitioner self-excluded until June 16, 2026. Tennessee's self-exclusion list allows individuals affected by problem gambling to voluntarily ban themselves from casinos, internet-based gambling, video gaming terminals, and fantasy sports wagering. They can choose the length of their ban from multiple options.

9. Petitioner also, on June 16, 2021, self-excluded from Bet MGM's own website, as a separate and apart act from his state of Tennessee self-exclusion. That self-exclusion should not have been lifted, under any circumstances, until June 16, 2026.

10. BetMGM's responsible gaming policy clearly states: "Self-exclusion is irrevocable and binding for the entire selected duration. Once a customer selects a self-exclusion period, it cannot be reversed or shortened under any circumstances. Removal from a state list does not alter or override the operator's separate exclusion obligations."

11. Even if Petitioner were removed from the State of Tennessee's self-excluded gamblers list early, as was the case in May of 2023, the BetMGM Self-Exclusion should have remained in effect until 2026.

12. According to BetMGM's own policy: If an individual on their self-exclusion list somehow places a wager, the wager will be canceled and the funds returned to the gambler.

13. Petitioner placed wagers with BetMGM from May 2023 to approximately June 2025, with wins and losses totaling nearly $300,000.00. See attached, as *Exhibit A*, some samples of wagers placed during the pendency of the self-exclusion agreement. Bank statement

proof of deposits made by the self-excluded petitioner to BetMGM LLC during the period of self exclusion can also be produced, under seal, if the court would like to review said information.

14. Pursuant to BetMGM's own policy, Petitioner should not have been able to place any wager during his self-exclusion term, *even if* the state of Tennessee ended his self-exclusion early.

15. By allowing the Petitioner to wager prior to the petitioner's self-exclusion term ending, which would not have occurred until June 2026, BetMGM preyed on the petitioner, and, essentially, removed petitioner from his incubation of treatment too early, in violation of their own policies and to the great financial detriment of the petitioner.

16. The state of Pennsylvania encountered several similar instances of misconduct by BetMGM in January 2025, and the Pennsylvania Gaming Control Board (PGCB) fined BetMGM $261,000 as a result of the violation in addition to requiring that BetMGM return the amounts wagered to the self-excluded gamblers.

17. In Tennessee, the Sports Wagering Council has the authority to fine, suspend, or revoke the license of any company that accepts wagers from self-excluded individuals. The Sports Wagering Council requires licensed sports books to have internal systems to enforce self-excluded status of state citizens. See the Tennessee Sports Gaming Act, codified at Tennessee Code Annotated § 4-51-301 *et seq.*

## CAUSES OF ACTION

18. Violations of the the Tennessee Sports Gaming Act, codified at Tennessee Code Annotated § 4-51-301 *et seq.* The factual allegations of this case represent violations of the Tennessee Sports Gaming Act in that the Act is designed to protect vulnerable citizens by

punishing powerful companies that prey on them. The petitioner in this case represents a vulnerable person who has been preyed upon to his great financial detriment.

19. Violations of the Consumer Protection Act. The Tennessee Consumer Protection Act of 1977 protects consumers from unfair and deceptive business practices by prohibiting deceptive acts and offering a civil remedy for those harmed, including potential triple damages and attorney's fees. This petitioner is a consumer in Tennessee as that term is applied within the Tennessee Consumer Protection Act, and he has been victimized by unfair and deceptive business practices by being allowed to participate on a business platform, from 2023 to 2025, when he had specifically removed himself from the class of persons eligible to participate until 2026. BetMGM engaged in false and deceptive trade practices by inducing the petitioner to place wagers with false of misleading advertisements that tended to increase the likelihood of success.

20. Breach of Contract. A breach of contract claim in Tennessee requires proving the existence of a valid contract, that one party failed to perform their obligations, and that the petitioner performed his part of the agreement, and that the petitioner suffered damages as a result of the breaching party's actions or inactions. For a breach to be considered "material," it must be significant enough to allow the non-breaching party to end the contract and sue for damages. In this matter, the petitioner signed himself in to BetMGM Self Exclusion program, and asked to be disallowed to participate as a gambler again until 2026. BetMGM breached the contract when they allowed petitioner to begin placing wagers again in 2023 — three years prior to the self exclusion period ending in 2026. BetMGM knew, or reasonably should have known, that they were taking advantage of a vulnerable individual who had placed himself into their

company's self-exclusion program. Instead, BetMGM allowed petitioner to wager and experience significant losses.

BetMGM offered a self-exclusion program to the petitioner. Petitioner accepted, and entered himself into the self-exclusion program. BetMGM knew, or should have known, that the petitioner was a vulnerable person who was at-risk for gambling addiction. Nonetheless, BetMGM breached the contract of self-exclusion by allowing the petitioner to wager prior to the contract term formally ending in 2026.

The petitioner and the respondent are the only parties to the self-exclusion contract referenced, and the respondent is in possession of said contract.

21. Negligence and Negligent Enablement. Negligence consists of duty, breach, causation, damages, and foreseeability. Duty exists in this case because the petitioner is a long-time customer of the respondent, BetMGM, who had self-excluded himself from participation with the respondent until 2026. BetMGM breached their duty by allowing the petitioner to place wagers prior to the end of his self exclusion term. The breach by BetMGM of allowing the petitioner to place wagers before his self-exclusion ended, have caused significant financial damages to the petitioner. There is no other cause, other than the breach by BetMGM, that could have led to the petitioner's financial losses that he is currently experiencing. The financial losses being experienced by the petitioner are a reasonably foreseeable outcome of the breach of the duty owed by BetMGM to the petitioner, as a self-excluded individual.

Further, the respondent, BetMGM, enabled the addictive sports gambling behaviors exhibited by the petitioner. Respondent, BetMGM, knew or reasonably should have known, of

the tendencies of the petitioner, since the petitioner had formally requested self exclusion until 2026.

## **PRAYERS FOR RELIEF**

As a result of violations of the causes of action listed above, the petitioner respectfully requests that the precise amount (potentially $300,000.00) that he wagered with BetMGM from 2023 to 2025, while he was still listed on BetMGM's self-exclusion list, be returned to him, because by allowing the petitioner to place wagers the respondent was in breach of contract.

Petitioner further requests damages in tort for the negligence of allowing him to place wagers while he was self-excluded with BetMGM. Damages for negligence and / or negligent enablement are not expected to exceed two hundred and fifty thousand dollars ($250,000.00).

Petitioner respectfully requests that damages be trebled in light of the fraudulent behavior of the respondent in encouraging and allowing the self-excluded petitioner to place wagers from 2021 to 2026, while self-excluded.

Petitioner respectfully requests an award of all attorneys fees and all costs in pursuing this matter.

Petitioner respectfully requests an award of any and all other relief that he is entitled to under the law.


Respectfully submitted,
LAW OFFICE OF RACHEL ZAMATA, LLC


/s/ Rachel Zamata Odom Swanson
Rachel Zamata Odom Swanson, Esq. (B.P.R. 29328)
3200 West End Avenue, Suite 500

Nashville, Tennessee 37203
rachel@rachelzamatalaw.com
Telephone      615-352-3885
Facsimile      615-601-3118

## CERTIFICATE OF SERVICE

I hereby certify that, upon the filing of this document, a true and correct copy of the foregoing has been sent via U.S. mail and / or email to:

Tennessee Sports Wagering Council
312 Rosa Parks Avenue, 8th Floor
Nashville, Tennessee 37243
stephanie.S.Maxwell@tn.gov

Or

BetMGM LLC
Corporation Service Company
2908 Poston Avenue
Nashville, Tennessee 37203.

/s/ Rachel Zamata Odom Swanson
Rachel Zamata Odom Swanson, Esq.

## <u>Declaration</u>

I, Dilvar Tayip, pursuant to Tennessee Rules of Civil Procedure, Rule 72, declare under penalty of perjury that the statements made in this Petition for Judicial Review are true to the best of my knowledge and belief and these statements are not made with levity or by collusion with the opposing party but in sincerity and truth.


<u>/s/ Dilvar Tayip</u>                                        <u>October 3, 2025</u>

Dilvar Tayip                                              Date

Case 3:26-cv-00409     Document 1-1     Filed 04/06/26     Page 23 of 28 PageID #: 27

**EXHIBIT A**

FILED

2025 OCT -6 AM 9:56

CLERK & MASTER
DAVIDSON CO. CHANCERY CT

LN       D C & M.

**7:06** 🌙   📶 29

## My Bets                    ( Close )

**Live** 1             **Open** 1             **Settled**

---

**Parlay • 3 Legs**   Edit Bet                    **+645**

Kentucky -2.5 | Alabama -8.5 | Boston Celtics -11.5

Hide legs ∧

✓ **Kentucky -2.5**                           **-110**
   Spread
   **Result: Kentucky -2.5**
   Kentucky won by 9

   **Illinois** @ **Kentucky · 75 - 84** Finished

○ **Alabama -8.5**                            **+100**
   Spread
   Alabama ahead by 9

   ● **Saint Mary's CA** @ **Alabama · 63 - 72** 2H < 03:45

○ **Boston Celtics -11.5**                    **-105**
   Spread
   Celtics ahead by 13

   ● **Celtics** @ **Trail Blazers · 129 - 116** Q4 < 01:15

---

Stake: **$1,000.00**        Potential payout: **$7,454.55**

( **Cash Out $2,574.25** )

Auto cash out

TN · 3/23/25 · 5:36 PM    📄 Betslip ID: 200K2CBZFB          ↱

**Live** 3          Open 3          Settled

---

**Panathinaikos Athens (GRE) -16.5** ⁞ Edit Bet          **-125**
Spread

| **Panathinaikos Athens (GRE)** | **29** ⁞ 18 | 11 | - | - |
| **Anadolu Efes (TUR)** | **11** ⁞ 10 | 1 | - | - |

● LIVE  Q2 < 07:15

Stake: **$1,454.00**          Potential payout: **$2,617.20**



Auto cash out

TN · 5/6/25 · 2:16 PM    🗋 Betslip ID: 202J7OKZG2

---

**Science City Jena -32.5** ⁞ Edit Bet          **-145**
Spread

| **Science City Jena** | **100** ⁞ 26 | 32 | 27 | 15 |
| **VfL Bochum** | **77** ⁞ 20 | 18 | 14 | 25 |

● LIVE  Q4 < 00:15

Stake: **$750.00**          Potential payout: **$1,267.24**

Cash Out Unavailable

Auto cash out

TN · 5/6/25 · 1:57 PM    🗋 Betslip ID: 202J6DHKYD

---

**Parlay • 2 Legs** ⁞ Edit Bet          **+220**
F.C. Barcelona (ESP) +7.5 ⁞ FC Barcelona

Hide legs ⌃

✔ **F.C. Barcelona (ESP) +7.5**          **-140**
Spread

Case 3:26-cv-00409    Document 1-1    Filed 04/06/26    Page 26 of 28 PageID #: 30

**IN THE CHANCERY COURT FOR THE STATE OF TENNESSEE**
**TWENTIETH JUDICIAL DISTRICT, DAVIDSON COUNTY, PART III**
**AT NASHVILLE**

| | | |
|---|---|---|
| **DILVAR TAYIP,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 25-1399-III** |
| | ) | |
| **TENNESSEE SPORTS WAGERING** | ) | |
| **COUNCIL, and BET MGM, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER BIFURCATING CLAIMS

In his "Petition For Judicial Review of Decision of the Sports Wagering Counsel" ("Petition") filed on October 6, 2025, Petitioner joined an administrative appeal with an original action. An original action and an appellate review are procedurally and legally separate and cannot be before the Court in one case. *See Universal Outdoor, Inc. v. Tenn. Dep't of Transp*., No. M2006-02212-COA-R3-CV, 2008 WL 4367555, at \*9 (Tenn. Ct. App. Sept. 24, 2008)("A direct or original action cannot be brought in conjunction with an action that is appellate in nature, such as judicial review under the APA or common law writ of certiorari."); *see also Goodwin v. Metro. Bd. of Health*, 656 S.W.2d 383, 387 (Tenn. Ct. App. 1983). Accordingly, the Court hereby **SEVERS** the administrative appeal in the Petition from the original jurisdiction claims. See Tenn. R. Civ. P. 21 ("Any claim against a party may be severed and proceeded with separately."); Tenn. R. Civ. P. 42.02 (Court may order a separate trial of any one or more claims, cross-claims, counterclaims, third-party claims, or issues).

The Court hereby **DIRECTS** the Clerk & Master's Office to sever the administrative appeal from the original jurisdiction claims in the Petition and to assign the original jurisdiction claims to Chancery Court Part III under a new case number.

1

**IT IS SO ORDERED.**

*/s/ I'Ashea L. Myles*

**HON. CHANCELLOR I'ASHEA L. MYLES**
**CHANCERY COURT PART III**

cc by U.S. Mail, fax, or efiling as applicable to:

Rachel Zamata Odom Swanson
3200 West End Avenue, Suite 500
Nashville, Tennessee 37203
rachel@rachelzamatalaw.com
*Counsel for Petitioner*

Kevin Baltz
BAKER DONELSON
1600 West End Avenue, Suite 2000
Nashville, TN 37203
kbaltz@bakerdonelson.com
*Counsel for Bet MGM LLC*

Tyler Sanders
Senior Assistant Attorney General
Financial Division
John Sevier Building, 3rd Floor
500 Dr. Martin L. King Jr. Blvd.,
Nashville, TN 37243
Tyler.Sanders@ag.tn.gov

Mailing Address:
Post Office Box 20207
Nashville, TN 37202
*Attorneys for the Sports Wagering Council*