# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

DILVAR TAYIP,                    )
                                 )
      Plaintiff,           )      Civil Action No. 3:26-CV-00409
                                 )
v.                               )      District Judge Waverly D. Crenshaw Jr.
                                 )
BETMGM, LLC,                     )      Magistrate Judge Barbara D. Holmes
                                 )
      Defendant.           )

## DEFENDANT BETMGM, LLC'S MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS AND MEMORANDUM OF LAW IN SUPPORT

Defendant BetMGM, LLC ("BetMGM") respectfully submits this Motion to Compel Arbitration and to Stay Proceedings and Memorandum of Law in Support ("Motion"), and states as follows:

## SUMMARY OF ARGUMENT

Plaintiff Dilvar Tayip ("Plaintiff") is a patron of BetMGM, a leading sports betting and online gaming technology company. Plaintiff created an account and used BetMGM's online gaming services through the company's Tennessee platform. Plaintiff brought a variety of claims against BetMGM alleging that BetMGM improperly allowed Plaintiff to place wagers on its service after Plaintiff was removed from the State of Tennessee's self-excluded gamblers list. BetMGM categorically denies any wrongdoing regarding the same. However, this Court need not wade into the merits of Plaintiff's claims or BetMGM's defenses because they belong in binding arbitration.

To access and use BetMGM's services, Plaintiff was required to register his account through BetMGM's website or mobile application. The sign-up process required Plaintiff to affirmatively check a box indicating that he "read and agree[d] to be legally bound by the Terms

of Service" (which were available through hyperlinked text). Whenever BetMGM periodically updates its Terms of Service, it requires patrons to affirmatively accept the updated Terms of Service.

All versions of BetMGM's Terms of Service that Plaintiff has accepted include an arbitration provision, and the latest Terms of Service accepted by Plaintiff includes a broad and mandatory arbitration agreement through which Plaintiff agreed to arbitration of "ANY CLAIMS" not resolved by BetMGM's informal dispute resolution process and "ALL OTHER ACTIONS OR PROCEEDINGS ARISING IN CONNECTION WITH, TOUCHING UPON, OR RELATING TO THESE TERMS, THE SERVICE(S) (INCLUDING THE GAMING SERVICES), THE PLATFORMS, WAGERING TRANSACTIONS, THE SITE, THE APP, OR THE ALLEGED BREACH OF THESE TERMS OF SERVICE." (Terms at § 28.5.1 (emphasis in original)).

Neither federal nor state law permits Plaintiff to circumvent his contractual obligation to arbitrate the present claims. Accordingly, this Court should compel arbitration and stay this proceeding.

**PROCEDURAL BACKGROUND**

On October 6, 2025, Plaintiff filed a complaint against BetMGM and the Tennessee Sports Wagering Council ("SWC") in the Chancery Court for Davidson County, Tennessee, Case No. 25-1399-III ("Original Chancery Court Action"). (*See* ECF No. 1-1). On November 5, 2025, SWC filed a Motion to Sever Claims and Bifurcate Case Proceeding in the Original Chancery Court Action, and, on March 6, 2026, the Chancery Court entered an Order severing the administrative appeal against SWC from the original jurisdiction claims against BetMGM and directing the Clerk & Master's Office to assign the claims against BetMGM to Chancery Court Part III under a new case number. (*See* ECF No. 1-1). On March 9, 2026, the new case against BetMGM was opened

2

as Chancery Court Case No. 26-0291-III ("Second Chancery Court Action"). (*See* ECF No. 1-1). The Second Chancery Court Action did not include claims against SWC, so complete diversity existed between Plaintiff and BetMGM. BetMGM then timely removed the action to this Court on April 6, 2026. (*See* ECF No. 1).

<b><u>FACTUAL BACKGROUND</u></b>

### A. BetMGM and Its Terms of Service

BetMGM is an online gaming company that provides industry leading sports and betting experiences. As explained in greater detail below and in the accompanying Declaration of Sarah Brennan (Vice President, Compliance) (hereinafter, "Brennan Decl."), to create a BetMGM account, all patrons – including Plaintiff – must complete a sign-up flow which includes the acceptance of BetMGM's Terms of Service. When visiting the BetMGM website (www.betmgm.com) through a browser or the BetMGM app, the patron will arrive at BetMGM's landing page which lists the states where BetMGM's products and services are available.

To register an account with BetMGM, patrons must select the appropriate state-specific platform to play.[1] After making this selection, as shown in the below screenshots, the patron faces a link to "Register" for a BetMGM account in the top righthand corner. Clicking "Register" activates the account sign-up flow, where the patron is prompted to provide personal information that is necessary for BetMGM to provide its services. This includes providing information such as the patron's email address, password, legal name, the last four digits of a Social Security Number, date of birth, mobile telephone number, and residential address. Finally, the last step of the sign-

---

[1] The screenshots below and in Exhibit A attached to the Brennan Decl. are taken from the sign-up flow for BetMGM accounts created on BetMGM's Michigan platform. The sign-up flow for BetMGM's Tennessee platform would have been the same, so this figure reflects what Plaintiff would have seen when he signed-up for a BetMGM account.

3

up flow starts with the patron being prompted to check a box confirming they are over 21 years of age, check a box declaring the information they provided is accurate, and check a box attesting: "I have read and agree to be legally bound by the Terms of Service[.]" The below screenshots show the sign-up flow that Plaintiff would have followed:



(Brennan Decl., Exhibit A). When clicked, the underlined "Terms of Service" text opens a new window showing the full text of the Terms of Service. A patron may not proceed to create an account or use BetMGM's services, including placing wagers, without first having checked all three boxes and clicking on the green "Create My Account" button. (Brennan Decl. ¶ 6).

BetMGM maintains records showing the date and time of each patron's acceptance of the Terms of Service and any acknowledgement of updated Terms of Service. (Brennan Decl. ¶ 11). The below screenshot shows the acceptance acknowledgement that Plaintiff would have agreed to each time Plaintiff accepted BetMGM's updated Terms of Service:

4



(Brennan Decl., Exhibit B). A copy of the current Terms of Service was (and is) also available through a link on the BetMGM platform, accessible at any time. (Brennan Decl. ¶ 8).

### B. Plaintiff Repeatedly Accepted BetMGM's Terms of Service

As confirmed in BetMGM's records, Plaintiff registered his BetMGM account through its Tennessee platform on October 31, 2020, affirmatively accepting BetMGM's Terms of Service when he completed the sign-up flow depicted above. (Brennan Decl. ¶¶ 11-13, Ex. C [BetMGM's Terms for Tennessee (BetMGM's Terms for Tennessee from November of 2020 along with updated versions of Terms of Service accepted by Plaintiff prior to Plaintiff's most recent acceptance of the Terms of Service)]). From November 1, 2020 to April 23, 2025, Plaintiff logged on to BetMGM's platform numerous times and accepted BetMGM's updated Terms of Service multiple times. (Brennan Decl. ¶ 14). On April 23, 2025, the most recent example of Plaintiff's acceptance of BetMGM's updated Terms of Service, Plaintiff accepted an updated version of BetMGM's Terms of Service when prompted, which included the arbitration provision quoted throughout this Motion. (Brennan Decl. ¶¶ 11-17, Ex. B [Screenshot of Updated Terms Notice], Ex. D [BetMGM's Terms for Tennessee (April 9, 2025)] (hereinafter, "Terms")).

## C. The Agreement to Arbitrate

The applicable Terms unambiguously require disputes between Plaintiff and BetMGM that could not be resolved through BetMGM's informal dispute resolution process to be resolved through mandatory, binding arbitration ("Agreement to Arbitrate"). The very first paragraph of the Terms alerts patrons to the impact of accepting the agreement, instructing in capitalized text to "PLEASE READ THESE TERMS OF SERVICE CAREFULLY BEFORE ACCEPTING" and "THEN PRINT THESE TERMS OF SERVICE AND STORE THEM." (Terms at p. 2). The second paragraph of the Terms emphasizes the mandatory, binding arbitration provision, specifically:

> **THESE AGREEMENTS CONTAIN AN ARBITRATION PROVISION REQUIRING BOTH PARTIES TO RESOLVE DISPUTES ON AN INDIVIDUAL BASIS, TO THE FULLEST EXTENT PERMITTED BY LAW, IN FINAL AND BINDING ARBITRATION, UNLESS YOU OPT OUT, ... BY ACCEPTING THESE AGREEMENTS, YOU AFFIRM THAT YOU HAVE READ AND UNDERSTOOD ALL PROVISIONS OF THE AGREEMENTS, INCLUDING THE ARBITRATION PROVISION IN SECTION 28.**

(Terms at p. 2 (emphasis in original)).[2]

Section 28 of the Terms addresses "BINDING INDIVIDUAL ARBITRATION, DISPUTE RESOLUTION, AND APPLICABLE LAW," and emphasizes: "**PLEASE READ THIS SECTION CAREFULLY – IT MAY SIGNIFICANTLY AFFECT YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT.**" (Terms at § 28 (emphasis in original)). The Agreement to Arbitrate provides for final and binding arbitration, specifically:

> PURSUANT TO THE FEDERAL ARBITRATION ACT, **ANY CLAIMS** WHICH ARE NOT RESOLVED BY THE [INFORMAL DISPUTE RESOLUTION PROCESS], AND **ALL OTHER ACTIONS OR PROCEEDINGS ARISING IN CONNECTION WITH, TOUCHING UPON, OR RELATING TO** THESE TERMS, THE SERVICE(S) (INCLUDING THE

---

[2] The word "arbitration" is included a total of fifty-four (54) times in the Terms.

GAMING SERVICES), THE PLATFORMS, WAGERING TRANSACTIONS, THE SITE, THE APP, OR THE ALLEGED BREACH OF THESE TERMS OF SERVICE ("DISPUTES"), **SHALL BE SUBMITTED TO JUDICIAL ARBITRATION AND MEDIATION SERVICES ("JAMS") FOR FINAL AND BINDING INDIVIDUAL ARBITRATION** UNDER ITS STREAMLINED ARBITRATION RULES AND PROCEDURES.

(Terms at § 28.5.1 (emphasis added)).

The Agreement to Arbitrate provides that the Federal Arbitration Act ("FAA") governs the "enforceability, application, and interpretation of this arbitration agreement." (Terms at § 28.4.1). Further, the arbitration shall be held before a single arbitrator. (Terms at § 28.5.5). Additionally, the Agreement to Arbitrate includes a broad delegation provision, specifically that "all disputes regarding whether this arbitration agreement is unenforceable, unconscionable, applicable, valid, void or voidable, and all disputes regarding the scope of this arbitration agreement, shall be determined exclusively by an arbitrator, and not by any court." (Terms at § 28.4.2). BetMGM is entitled to enforce the arbitration provision. (Terms at § 28.5.2).

The Agreement to Arbitrate also expressly incorporates the JAMS Streamlined Arbitration Rules and Procedures (Terms at §§ 28.5.1 and 28.5.3), which provide that "[t]he Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter[,]" including "disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought." JAMS Streamlined Arbitration Rules and Procedures, Rule 8(b), *available at* https://www.jamsadr.com/rules-streamlined-arbitration.

If there was any doubt about Plaintiff's right to nevertheless pursue the present claims in state or federal court, the Agreement to Arbitrate further provides that:

NEITHER PARTY SHALL BE ENTITLED OR PERMITTED TO COMMENCE OR MAINTAIN ANY ACTION IN A COURT OF LAW WITH RESPECT TO ANY MATTER IN DISPUTE UNTIL SUCH MATTER SHALL HAVE BEEN SUBMITTED TO ARBITRATION AS HEREIN PROVIDED, AND THEN ONLY FOR THE ENFORCEMENT OF THE ARBITRATOR'S AWARD,

7

WHICH SHALL BE FINAL AND BINDING AND MAY BE ENFORCED IN ANY COURT OF COMPETENT JURISDICTION PURSUANT TO THE FEDERAL ARBITRATION ACT. <u>THE PARTIES EXPRESSLY WAIVE THEIR RIGHT TO A JURY AND AGREE TO PROCEED WITH BINDING ARBITRATION</u>.

(Terms at § 28.5.8 (emphasis in original)).

### D. Plaintiff's Present Claims against BetMGM

Plaintiff's claims against BetMGM include alleged: (1) violations of the Tennessee Sports Gaming Act; (2) violations of the Tennessee Consumer Protection Act; (3) breach of contract; (4) negligence and negligent enablement; (5) negligent misrepresentation; (6) unjust enrichment; (7) breach of the implied covenant of good faith; and (8) fraud. (*See* ECF No. 1-1 at pp. 6-9, ¶¶ 16-23). Among other things, Plaintiff alleges that BetMGM violated its Terms by improperly allowing Plaintiff to place wagers on its service after Plaintiff was removed from the State of Tennessee's self-excluded gamblers list. However, Plaintiff does not allege that he first sought arbitration of such claims (as he agreed to do when registering for an account).

Before removing this action to this Court, BetMGM's counsel sent the applicable Terms to Plaintiff's counsel and specifically noted the Agreement to Arbitrate. In the interest of judicial economy, before filing this Motion, BetMGM's counsel again sent the applicable Terms to Plaintiff's counsel to confirm that Plaintiff intends to oppose arbitration irrespective of the Agreement to Arbitrate. Plaintiff's counsel confirmed that Plaintiff did not agree to submit the present claims to arbitration and intends to oppose the same. Accordingly, BetMGM was forced to bring this Motion.

### LEGAL STANDARD

The FAA embodies a "national policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (citation omitted). "Congress enacted the FAA to replace

8

judicial indisposition to arbitration." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (citation omitted). The FAA applies to any arbitration agreement that is: (1) written; and (2) part of a "contract evidencing a transaction involving [interstate] commerce." 9 U.S.C. § 2. Arbitration agreements that satisfy these requirements are enforceable as a matter of federal law. *Id.* "Courts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 228 (2013) (citation omitted). "If a plaintiff's cause of action is covered by an arbitration clause, the court must stay the proceedings until the arbitration process is complete." *Glazer v. Lehman Bros.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing 9 U.S.C. § 3). "It is well-established that any doubts regarding arbitrability should be resolved in favor of arbitration." *Glazer*, 394 F.3d at 451 (citation omitted). "The party opposing arbitration has the burden to show a genuine issue of material fact on whether the agreement to arbitrate is valid." *Edmonson v. Captain D's LLC*, No. 3:23-CV-01065, 2024 WL 2164619, at *2 (M.D. Tenn. May 14, 2024).

## ARGUMENT

Under the FAA, this Court must decide only a single issue before compelling arbitration: whether there is a valid agreement to arbitrate Plaintiff's claims. *See, e.g.*, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019); *Cotton v. Dollar Gen. Corp.*, No. 3:23-CV-01215, 2024 WL 3640473, at *4 (M.D. Tenn. Aug. 2, 2024) ("Having established that the parties agreed to the Terms and Conditions, one of which was to delegate decisions of arbitrability to an arbitrator, the Court's analysis ends and there is nothing left for the court to do but compel arbitration."). Here, the parties have a valid Agreement to Arbitrate, and the parties expressly chose to delegate other issues regarding arbitrability to the arbitrator.

**A. The Agreement to Arbitrate is a Binding Contract whereby Plaintiff Affirmatively Agreed to Arbitrate Claims against BetMGM.**

Federal courts determine the validity of an arbitration agreement by "apply[ing] ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The Agreement to Arbitrate provides that the FAA governs the "enforceability, application, and interpretation of this arbitration agreement" and "[i]f for whatever reason the rules and procedures of the FAA cannot apply, Tennessee law governing arbitration agreements shall apply." (Terms at § 28.4.1).

Under Tennessee law, an enforceable contract "must result from a meeting of the minds in mutual assent to terms, must be based upon sufficient consideration, must be free from fraud or undue influence, not against public policy and must be sufficiently definite to be enforced." *Condon v. Vanderbilt Univ. Med. Ctr.*, No. 3:22-CV-00847, 2023 WL 5185131, at *4 (M.D. Tenn. Aug. 11, 2023) (quoting *Klosterman Development Corp. v. Outlaw Aircraft Sales, Inc.*, 102 S.W.3d 621, 635 (Tenn. Ct. App. 2002)). Plaintiff's affirmative acceptance of BetMGM's Terms created an enforceable contract. *See, e.g.*, *Cotton*, 2024 WL 3640473, at *3 (finding sufficient evidence to establish the existence of an agreement when Plaintiff did "not dispute that in the enrollment process for her Dollar General Account she affirmed that she had read and agreed to the Terms and Conditions."); *Anderson v. Amazon.com, Inc.*, 490 F. Supp. 3d 1265, 1276 (M.D. Tenn. 2020) ("Regardless of whether the agreement constitutes clickwrap or hybrid clickwrap/browsewrap, the agreement is of the type that has regularly been upheld by courts."); *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 882 (6th Cir. 2021) (recognizing hyperlink allowing plaintiff to click and read terms of service supports existence of a contract) (applying Michigan law). No aspect of BetMGM's Terms or its sign-up flow is procedurally or substantively unconscionable.

As a result, the Agreement to Arbitrate is a binding contract whereby Plaintiff affirmatively agreed to arbitrate claims against BetMGM.

**B. The Agreement to Arbitrate Clearly Encompasses Plaintiff's Present Claims against BetMGM.**

Courts determine the scope of an arbitration agreement "in light of the strong federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration." *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 503 (6th Cir. 2007) (citation omitted). As such, "an order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citation omitted). "In the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.*

Here, the Agreement to Arbitrate is broad and covers "ANY CLAIMS" not resolved by BetMGM's informal dispute resolution process and "ALL OTHER ACTIONS OR PROCEEDINGS ARISING IN CONNECTION WITH, TOUCHING UPON, OR RELATING TO THESE TERMS, THE SERVICE(S) (INCLUDING THE GAMING SERVICES), THE PLATFORMS, WAGERING TRANSACTIONS, THE SITE, THE APP, OR THE ALLEGED BREACH OF THESE TERMS OF SERVICE." (Terms at § 28.5.1 (emphasis in original)). The Sixth Circuit has held that arbitration agreements using the language of "arising out of or related to" are "extremely broad" and encompass a wide range of disputes connected to the underlying transaction. *See, e.g.*, *Nestle*, 505 F.3d at 505 (quoting *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 578 (6th Cir. 2003)).

The instant lawsuit falls squarely within the scope of the contractual language. Each of

11

Plaintiff's claims is premised on an alleged breach arising in connection with or relating to BetMGM's Terms, BetMGM's services, and/or Plaintiff's use of BetMGM's services, and Plaintiff is seeking relief relating to the same. Moreover, the Agreement to Arbitrate contains no provision excluding Plaintiff's claims from arbitration. Accordingly, the Agreement to Arbitrate plainly encompass the dispute presented here.

### C. The Delegation Clause in the Agreement to Arbitrate Requires an Arbitrator to Decide Questions of Arbitrability.

Additionally, the Agreement to Arbitrate includes a delegation clause requiring an arbitrator to decide questions of arbitrability. Under the FAA, parties to an arbitration agreement may agree by contract that "an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019) (citations omitted). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein*, 586 U.S. at 68.

Here, the Agreement to Arbitrate includes a broad delegation provision providing that "all disputes regarding whether this arbitration agreement is unenforceable, unconscionable, applicable, valid, void or voidable, and all disputes regarding the scope of this arbitration agreement, shall be determined exclusively by an arbitrator, and not by any court." (Terms at § 28.4.2). This is "clear and unmistakable evidence" of delegation. *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021) (citations omitted). The parties' agreement to delegate threshold questions of arbitrability to an arbitrator is further confirmed by the Terms' incorporation of the JAMS Streamlined Arbitration Rules and Procedures (Terms at §§ 28.5.1 and 28.5.3), which provide that "[t]he Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter[,]" including "disputes over the formation, existence, validity, interpretation or scope of the

12

agreement under which Arbitration is sought." JAMS Streamlined Arbitration Rules and Procedures, Rule 8(b), *available at* https://www.jamsadr.com/rules-streamlined-arbitration.

Because "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement" the "FAA operates on [it] just as it does on any other." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 (2010). It is well settled that parties can agree to arbitrate not only the merits of their disputes, but also "gateway questions of arbitrability" including "whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Swiger*, 989 F.3d at 505 (quoting *Rent-A-Center*, 561 U.S. at 68–69). "A valid delegation clause precludes courts from resolving any threshold arbitrability disputes, even those that appear 'wholly groundless.'" *Swiger*, 989 F.3d at 505 (citations omitted).

Given that Plaintiff agreed to arbitrate not only any underlying claims but also any disputes regarding the enforceability or scope of the Agreement to Arbitrate, this Court should, respectfully, compel arbitration.

### D. The Court Should Stay the Action Pending Arbitration.

"When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *Glazer*, 394 F.3d at 451 (same). Because Plaintiff's claims are subject to binding arbitration, this Court should stay this action in its entirety pending resolution of the arbitration.

### CONCLUSION

The unambiguous Agreement to Arbitrate required Plaintiff to bring and resolve the present claims in arbitration. Accordingly, BetMGM respectfully requests that this Court compel Plaintiff's claims to arbitration and stay this action in its entirety pending resolution of the

arbitration.

Dated: April 13, 2026

Respectfully submitted,

*/s/ Jeremy D. Ray*
Kevin C. Baltz (TN BPR No. 022669)
Jeremy D. Ray (TN BPR No. 034407)
BAKER, DONELSON, BEARMAN,
CALDWELL, & BERKOWITZ, PC
1600 West End Avenue, Suite 2000
Nashville, TN 37203
Phone: 615-726-5566
kbaltz@bakerdonelson.com
jray@bakerdonelson.com

*Counsel for BetMGM, LLC*

14

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 13th day of April, 2026, a true and exact copy of the foregoing DEFENDANT BETMGM, LLC'S MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS AND MEMORANDUM OF LAW IN SUPPORT OF MOTION was filed through the Court's CM/ECF system and has been served upon the following counsel by electronic mail:

> Rachel Zamata Odom Swanson
> Law Office of Rachel Zamata, LLC
> 3200 West End Avenue, Suite 500
> Nashville, Tennessee 37203
> Email: rachel@rachelzamatalaw.com
>
> *Counsel for Plaintiff*

*/s/ Jeremy D. Ray*

Jeremy D. Ray
