DILVAR TAYIP
     **Plaintiff**

V

                                     **DOCKET NO. 3:26-cv-00409**
                                     **Jury (12) Demanded**

BET MGM LLC
     **Defendant.**

---

## PLAINTIFF'S RESPONSE IN OPPOSITION
## TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

---

Appears now, the Plaintiff, Dilvar Tayip, and files this response in opposition to the defendant's Motion to Compel Arbitration. In support of this motion, the plaintiff states as follows:

### BACKGROUND

The facts of this matter are as follows:

1. Plaintiff has engaged extensively in sports wagering since the process was legalized in the state of Tennessee.

2. Plaintiff has experienced much financial success in the past in his ventures in sports wagering.

3. Despite significant past financial success, the Plaintiff decided at some point in 2021 that he would stop wagering on any matters whatsoever for a period of five years.

4. Plaintiff placed himself on the Tennessee Voluntary Sports Wagering Self Exclusion List on or about June 16, 2021. Plaintiff self-excluded until June 16, 2026. Tennessee's self-exclusion list allows individuals affected by problem gambling to voluntarily ban themselves from casinos, internet-based gambling, video gaming terminals, and fantasy sports wagering. They can choose the length of their ban from multiple options.

5. Plaintiff also, on June 16, 2021, self-excluded from Bet MGM's own website, as a separate and apart act from his state of Tennessee self-exclusion. That self-exclusion should not have been lifted, under any circumstances, until June 16, 2026.

6. BetMGM's responsible gaming policy clearly states: "Self-exclusion is irrevocable and binding for the entire selected duration. Once a customer selects a self-exclusion period, it cannot be reversed or shortened under any circumstances. Removal from a state list does not alter or override the operator's separate exclusion obligations."

7. Even if Plaintiff were removed from the State of Tennessee's self-excluded gamblers list early, as was the case in May of 2023, the BetMGM Self-Exclusion should have remained in effect until 2026.

8. According to BetMGM's own policy: If an individual on their self-exclusion list somehow places a wager, the wager will be canceled and the funds returned to the gambler.

9. Plaintiff placed wagers with BetMGM from May 2023 to approximately June 2025, with wins and losses totaling nearly $300,000.00.

10. Pursuant to BetMGM's own policy, Plaintiff should not have been able to place any wager during his self-exclusion term, *even if* the state of Tennessee ended his self-exclusion early.

11.     By allowing the Plaintiff to wager prior to the plaintiff's self-exclusion term ending, and by counseling the plaintiff on how to have himself removed from Tennessee's Self-Exclusion Listing early — which would not have occurred until June 2026 — BetMGM preyed on the plaintiff, and, essentially, removed plaintiff from his incubation of treatment too early, in violation of their own policies and to the great financial detriment of the plaintiff.   Thus, the enforcement of any alleged agreement to arbitrate is unconscionable as a matter of fact and law.

## LEGAL ARGUMENT

12.     Fundamentally, there must be a valid contractual agreement to arbitrate, and the evaluation of the alleged "agreement" is on the same footing as the evaluation of any other alleged contract: "The federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan v. Sundance, Inc*., 142 S. Ct. 1708, 1713 (2022).  at 1713, citing, *National Foundation for Cancer Research v. A.G. Edwards & Sons, Inc*., 821 F.2s 772, 774 (C.A. D. C. 1987).

13.     By allowing the Plaintiff to wager prior to the plaintiff's self-exclusion term ending, and by counseling the plaintiff on how to have himself removed from Tennessee's Self-Exclusion Listing early — which would not have occurred until June 2026 — BetMGM preyed on the plaintiff, and, essentially, removed plaintiff from his incubation of treatment too early, in violation of their own policies and to the great financial detriment of the plaintiff.

14.     The arbitration clause in question lies outside the scope of the agreement since the allegations herein are that the defendant preyed upon and took advantage of an acknowledged gambling addict.   The arbitration clause of the contract is potentially valid only when both parties to the contract possessed the requisite meeting of the minds to enter into a contract.

15.     However, since the plaintiff was an acknowledged gambling addict who had self-excluded for a period of five (5) years that had not yet passed, he was not competent to enter into any contracts related to or involving wagering.  Thus, the arbitration clause to an invalid contract is, inherently, invalid.

<u>LEGAL STANDARD</u>

16.     Under the Federal Arbitration Act, if "the making of the arbitration agreement . . . [is] in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. To determine whether to compel arbitration, the Court must consider: "(1) whether the parties entered into a contractually valid arbitration agreement, and (2) whether the dispute falls within the scope of the arbitration agreement." *Murphy v. Glencore Ltd*., 2019 U.S. Dist. LEXIS 21930 (D. Conn. Feb. 11, 2019), citing *Nicosia v. Amazon.com, Inc*., 834 F.3d 220, 229 (2d Cir. 2016). The question whether parties have agreed to arbitrate is governed by state law principles of contract formation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); see also *Schnabel v. Trilegiant Corp*., 697 F.3d 110, 119 (2d Cir. 2012) ("Whether or not the parties have agreed to arbitrate is a question of state contract law.").

17.     The standard the Court "must apply when reviewing a motion to compel arbitration is essentially the same standard that the Court applies when it reviews a motion for summary judgment." *D'Antuono v. Serv. Rd. Corp*., 789 F. Supp. 2d 308, 319 (D. Conn. 2011) (citations omitted).

18.     That is, "[t]he party seeking an order to compel arbitration must substantiate [its] entitlement [to arbitration] by a showing of evidentiary facts that support its claim that the other party agreed to arbitrate." *Castro v. Loanpal, LLC*, 2022 U.S. Dist. LEXIS 113779, *18 (D.

Conn. June 28, 2022). If a sufficient showing is made, the party opposing arbitration must "submit evidentiary facts showing that there is a dispute of fact to be tried as to the making of the arbitration agreement." *Id*. "If there is an issue of fact as to the making of the agreement for arbitration, then a trial [on that issue] is necessary[,]" but where there is no genuine issue of fact, the court should "decide as a matter of law that the parties did or did not enter into such an agreement." *Id*

CONCLUSION

19. The arbitration clause in question lies outside the scope of the agreement since the allegations herein are that the defendant preyed upon and took advantage of an acknowledged gambling addict. The arbitration clause of the contract is potentially valid only when both parties to the contract possessed the requisite meeting of the minds to enter into a contract. However, since the plaintiff was an acknowledged gambling addict who had self-excluded for a period of five (5) years that had not yet passed, he was not competent to enter into any contracts related to or involving wagering. Thus, the arbitration clause to an invalid contract is, inherently, invalid, and should be set aside.

20. This case is about fraud and about a powerful gaming industry titan preying upon a vulnerable individual with a gambling addiction problem. The case should be addressed from that perspective and not as a case that is qualified for mandatory arbitration, which is a remedy available only to parties who have the capacity to contract to the matters in question.

21. The Defendant's Motion to Compel Arbitration should be denied and this matter should proceed within the traditional court system for resolution.

Respectfully submitted,
LAW OFFICE OF RACHEL ZAMATA, LLC

/s/ Rachel Zamata Odom Swanson
Rachel Zamata Odom Swanson, Esq. (B.P.R. 29328)
3200 West End Avenue, Suite 500
Nashville, Tennessee 37203
rachel@rachelzamatalaw.com
Telephone      615-352-3885
Facsimile      615-601-3118

## CERTIFICATE OF SERVICE

I hereby certify that, upon the filing of this document on April 18 2026, a true and correct copy of the foregoing has been sent via the federal court's electronic filing system to:

Kevin Baltz, Esq. and / or Jeremy Ray, Esq.
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, P.C.
1600 West End Avenue, Suite 2000, Nashville, Tennessee 37203

kbaltz@bakerdonelson,com

*Counsel for Bet MGM LLC*

/s/ Rachel Zamata Odom Swanson
Rachel Zamata Odom Swanson, Esq.